UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION and AMERICAN CIVIL LIBERTIES UNION FOUNDATION,<br><br>         *Plaintiffs*,<br><br>  v.<br><br>DEPARTMENT OF DEFENSE, CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF JUSTICE, and DEPARTMENT OF STATE,<br><br>         *Defendants*. | **COMPLAINT FOR INJUNCTIVE RELIEF**<br><br>Case No. 1:17-cv-3391<br><br>Hon. _____ |

Hina Shamsi
Brett Max Kaufman
Anna Diakun
American Civil Liberties Union
    Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
hshamsi@aclu.org

May 8, 2017

**COMPLAINT FOR INJUNCTIVE RELIEF**

**INTRODUCTION**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief. Plaintiffs the American Civil Liberties Union and the American Civil Liberties Union Foundation (together, the "ACLU") seek the immediate processing and timely release of agency records from Defendants Department of Defense ("DOD"), Central Intelligence Agency ("CIA"), Department of Justice ("DOJ"), and Department of State ("State Department").

2. On March 15, 2017, Plaintiffs submitted a FOIA request (the "Request") to the defendant agencies seeking records related to a January 29, 2017 U.S. raid in al Ghayil, Yemen (the "al Ghayil Raid" or the "Raid"). The Raid resulted in the death of a U.S. Navy SEAL and several civilians. The Request seeks information concerning: the legal and factual bases for the Raid; the process by which the government evaluated and approved the Raid; why certain areas of Yemen were "temporarily" designated as areas of active hostilities; and the extent of civilian deaths that resulted from the Raid.

3. The records likely to be responsive to this Request are of particular concern because the loss of life in the al Ghayil Raid is controverted, and after conducting an internal investigation, the government released little information about the circumstances surrounding the Raid, the legal or factual justifications for it, and its consequences. Some of the information the government did release—including its estimate of the number of civilian casualties—conflicts with the estimates of a human rights organization and independent journalists. This raises questions about the legal and evidentiary standards by which the government is abiding and the information gathered as a result of the government's official investigations.

4. To date, none of the Defendants has released any responsive record.

5. Plaintiffs now ask the Court for an injunction requiring DOD, CIA, DOJ, and the State Department to process the Request immediately. Plaintiffs also seek an order enjoining Defendants from assessing fees for the processing of the Request.

## JURISDICTION AND VENUE

6. The Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B), (a)(6)(E)(iii). The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701–706.

7. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

8. Plaintiff the American Civil Liberties Union is a nationwide non-profit and non-partisan 501(c)(4) organization with more than 1.6 million members dedicated to the constitutional principles of liberty and equality. The American Civil Liberties Union is committed to ensuring that the United States government complies with the Constitution and laws of this country, including its international legal obligations, in matters that affect civil liberties and human rights. The American Civil Liberties Union is also committed to principles of transparency and accountability in government, and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights. Obtaining information about governmental activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of the American Civil Liberties Union's work and one of its primary activities. The American Civil Liberties Union is incorporated in New York State and has its principal place of business in New York City.

9. Plaintiff the American Civil Liberties Union Foundation is a separate 501(c)(3) organization that educates the public about civil liberties and employs lawyers who provide legal representation free of charge in cases involving civil liberties. It is incorporated in New York State and has its principal place of business in New York City.

10. Defendant DOD is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1). The Office of the Secretary of Defense and Joint Staff, the United States Central Command ("CENTCOM"), and the DOD Office of Inspector General, from which the ACLU has requested records, are components of DOD.

11. Defendant CIA is an intelligence agency established within the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

12. Defendant DOJ is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1). The Office of Legal Counsel, from which the ACLU requested records, is a component of DOJ. The Office of Information Policy and the Office of the Attorney General, to which the DOJ FOIA Referral Unit referred the Request, are also components of DOJ.

13. Defendant State Department is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## FACTUAL BACKGROUND

### The al Ghayil Raid

14. On the evening of January 25, 2017, President Donald Trump approved a military raid on the village of al Ghayil, Yemen, while dining in the White House. In the early hours of January 29, 2017, Navy SEAL Team 6 carried out the Raid. The Raid resulted in the death of a

U.S. Navy SEAL and several civilians, and raised deep concerns about the legal and factual basis, planning, and execution of the operation.

15. Following the Raid, the Department of Defense conducted a review pursuant to Army Regulation 15-6, which involved three separate investigations: (1) an investigation into the death of U.S. Navy SEAL Ryan Owens; (2) an investigation into the civilian casualties that resulted from the Raid; and (3) an investigation into the crash and subsequent destruction of an Osprey aircraft.

16. On March 9, 2017, the head of the U.S. Central Command, General Joseph Votel, informed the Senate Armed Services Committee that two of the three investigations were complete, leaving only the investigation into the crash of the Osprey tilt-rotor aircraft ongoing.

17. During his testimony, General Votel disclosed that the investigation into civilian casualties concluded that between four and twelve civilians died. This tally conflicts with other reports that have placed that number higher. Human Rights Watch, for example, reported that at least fourteen civilians were killed, nine of whom were children. The Bureau of Investigative Journalism reported that twenty-five civilians were killed, while another report from Yemen estimates that up to thirty civilians were killed during the Raid. Journalist Iona Craig visited al Ghayil, interviewed survivors and witnesses, and reported that at least six women and ten children were killed.

18. In his testimony, General Votel informed Congress that there were no indicators of "poor decision making or bad judgment" related to the Raid, and he determined that "there was no need for an additional investigation into this particular operation."

19. The outcome of the Raid and conclusions of the subsequent investigations have raised serious concerns about the legal and factual bases for the al Ghayil Raid. According to

reports, the military obtained a temporary grant of authority to treat portions of Yemen as "areas of active hostilities." The *New York Times* reported that the Trump administration has exempted certain parts of Yemen from policy constraints laid out by the Obama administration in the Presidential Policy Guidance ("PPG"), which requires "near certainty" that no civilians will be killed in a planned operation. The "temporary" characterization of certain areas of Yemen as "areas of active hostilities" gives rise to concerns about the process by which the administration made this designation and its factual and legal bases for doing so.

20. Moreover, the al Ghayil Raid's outcome causes concern that the administration acted without adequate evidence and assurance that the Raid would be conducted in accordance with legal and policy safeguards against civilian casualties. Given the lack of adequate information released by the government supporting its assessment, coupled with the discrepancy between the government's announced tally of civilian casualties and the assessments of credible independent sources, the public does not have a sound basis to evaluate the legality of the operation or the government's assessment of deaths and injuries caused.

21. Release of the requested records will therefore provide crucial information because there are significant gaps in the public's understanding of the legal and factual bases for the al Ghayil Raid, why certain areas of Yemen were "temporarily" designated as areas of active hostilities, and the extent of the civilian deaths and harm that resulted from the raid.

### The FOIA Request

22. On March 15, 2017, the ACLU submitted identical FOIA Requests to DOD (specifically, its components the Office of the Secretary of Defense and Joint Staff, CENTCOM, and the DOD Office of Inspector General), CIA, DOJ (and its component the Office of Legal Counsel), and the State Department seeking:

5

(1) The legal and policy bases in domestic, foreign, and international law upon which the government evaluated or justified the al Ghayil Raid, including but not limited to records related to the designation of parts of Yemen as "areas of active hostilities," and the legal and factual basis that the government uses in designating such areas;

(2) The process by which the government approved the al Ghayil Raid, including which individuals possessed decision-making authority and the evidentiary standard by which the factual evidence was evaluated to support the determination;

(3) The process by which the decision was made to designate three parts of Yemen as "areas of active hostilities";

(4) Before-the-fact assessments of civilian or bystander casualties of the raid and the "after-action" investigation into the raid; and

(5) The number and identities of individuals killed or injured in the al Ghayil Raid, including but not limited to the legal status of those killed or injured, with these separated out by individuals intentionally targeted and collateral casualties or injuries.

23. Plaintiffs sought expedited processing of the Request on the ground that there is a "compelling need" for these records because the information requested is urgently needed by an organization primarily engaged in disseminating information in order to inform the public about actual or alleged federal government activity. 5 U.S.C. § 522(a)(6)(E).

24. Plaintiffs sought a waiver of search, review, and reproduction fees on the ground that disclosure of the requested records is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *Id.* § 552(a)(4)(A)(iii).

25. Plaintiffs also sought a waiver of search and review fees on the grounds that the ACLU qualifies as a "representative of the news media" and that the records are not sought for commercial use. *Id.* § 552(a)(4)(A)(ii).

### Defendants' Responses to the Request

26.     Despite the urgent public interest surrounding the requested documents, none of the Defendants has released any record in response to the Request. Some of the Defendants have granted the ACLU's requests for expedited processing and waiver of fees, while others have denied those same requests.

27.     Under the FOIA, Defendants have twenty working days to respond to a request. *See* 5 U.S.C. § 552(a)(6)(A)(i). If there are "unusual circumstances," an agency may extend the time limit by no more than ten working days. More than thirty working days have passed since Plaintiffs filed the Request. Thus, these statutory time periods have elapsed.

### DOD

*Office of the Secretary of Defense and Joint Staff*

28.     By letter dated March 20, 2017, the DOD Office of Freedom of Information acknowledged the Office of the Secretary of Defense and Joint Staff's receipt of the Request and assigned it case number 17-F-0705. The letter denied Plaintiffs' request for expedited processing and deferred consideration of Plaintiffs' request for a fee waiver until the conclusion of the search and assessment process.

29.     The Office of Freedom of Information additionally informed Plaintiffs that because of "usual circumstances which impact [its] ability to quickly process [Plaintiffs'] request," it would not be able to respond within the 20-day statutory time period under FOIA.

30.     To date, the Office of the Secretary of Defense and Joint Staff has neither released responsive records nor explained its failure to do so. Plaintiffs have exhausted all administrative remedies because the Office of the Secretary of Defense and Joint Staff has failed to comply with the time limit for responding to the Request under FOIA.

31. The Office of the Secretary of Defense and Joint Staff continues to wrongfully withhold the requested records from Plaintiffs.

*CENTCOM*

32. By letter dated March 27, 2017, CENTCOM acknowledged receipt of the Request and assigned it case number 17-0328. The letter denied Plaintiffs' request for expedited processing and their request for a fee waiver. CENTCOM placed Plaintiffs in the "Media" category for fee purposes.

33. On April 14, 2017, Plaintiffs timely filed by email an administrative appeal from CENTCOM's denial of the request for expedited processing and the denial of the request for a fee waiver.

34. By letter dated April 24, 2017, the Chief of the Appeals Office of the Freedom of Information Division of the DOD acknowledged the administrative appeal and assigned it reference number 17-AC-0033. The letter informed Plaintiffs that "[d]ue to an extremely heavy FOIA workload, we are unable to complete your appeal within the statutory time requirement." Plaintiffs' administrative appeal remains pending.

35. To date, CENTCOM has neither released responsive records nor explained its failure to do so. Plaintiffs have exhausted all administrative remedies because CENTCOM has failed to comply with the time limit for responding to the Request under FOIA.

36. CENTCOM continues to wrongfully withhold the requested records from Plaintiffs.

*DOD Office of Inspector General*

37. By email dated March 15, 2017, the DOD Office of Inspector General granted Plaintiffs' request for a fee waiver. By letter dated March 20, 2017, the DOD Office of Inspector

General acknowledged receipt of the Request and assigned it case number DODOIG-2017-000408. By email dated March 22, 2017, the DOD Office of Inspector General granted Plaintiffs' request for expedited processing.

38.   To date, the DOD Office of Inspector General has neither released responsive records nor explained its failure to do so. Plaintiffs have exhausted all administrative remedies because the DOD Office of Inspector General has failed to comply with the time limit for responding to the Request under FOIA.

39.   The DOD Office of Inspector General continues to wrongfully withhold the requested records from Plaintiffs.

## CIA

40.   By letter dated March 16, 2017, the CIA acknowledged receipt of the Request and assigned it reference number F-2017-01094. The CIA denied Plaintiffs' request for expedited processing and granted their request for a fee waiver.

41.   To date, the CIA has neither released responsive records nor explained its failure to do so. Plaintiffs have exhausted all administrative remedies because the CIA has failed to comply with the time limit for responding to the Request under FOIA.

42.   The CIA continues to wrongfully withhold the requested records from Plaintiffs.

## DOJ

### *Office of Legal Counsel*

43.   By letter dated March 24, 2017, received via email on March 27, 2017, the Office of Legal Counsel acknowledged receipt of the Request and assigned it tracking number FY17-159. The Office of Legal Counsel denied Plaintiffs' request for expedited processing and deferred a decision on Plaintiffs' request for a fee waiver. The Office of Legal Counsel noted

9

that it was "likely that [it] will be unable to respond to [Plaintiffs'] request within the twenty-day statutory deadline."

44.     To date, the Office of Legal Counsel has neither released responsive records nor explained its failure to do so. Plaintiffs have exhausted all administrative remedies because the Office of Legal Counsel has failed to comply with the time limit for responding to the Request under FOIA.

45.     The Office of Legal Counsel continues to wrongfully withhold the requested records from Plaintiffs.

*Office of Information Policy and Office of the Attorney General*

46.     By letter dated March 16, 2017, the Justice Management Division of DOJ, which serves as the DOJ FOIA Receipt and Referral Unit, acknowledged receipt of the Request and informed Plaintiffs that it had referred the Request to the Office of Information Policy. It also assigned the Request tracking number EMRUFOIA031617-5.

47.     By email dated March 21, 2017, the Office of Information Policy acknowledged that it had received the Request on March 16, 2017, and assigned it tracking number DOJ-2017-003069.

48.     On March 28, 2017, FOIA Officer Doug Hibbard contacted the ACLU by phone to ask if the ACLU would consider not requiring the Office of Information Policy to search for responsive records or otherwise respond to the Request. On April 3, 2017, Plaintiffs confirmed during a phone conversation with Doug Hibbard that they wanted the Office of Information Policy to conduct the search.

49.     By letter dated April 28, 2017, the Office of Information Policy, responding on behalf of the Office of the Attorney General, denied Plaintiffs' request for expedited processing

and deferred a decision on the request for a fee waiver. The Office of Information Policy also advised Plaintiffs that their "request falls within 'unusual circumstances,'" and "[b]ecause of these unusual circumstances, we need to extend the time limit to respond to your request beyond the ten additional days provided by the statute."

50. To date, the Office of Information Policy and the Office of the Attorney General have neither released responsive records nor explained their failure to do so. Plaintiffs have exhausted all administrative remedies because the Office of Information Policy and the Office of the Attorney General have failed to comply with the time limit for responding to the Request under FOIA

51. The Office of Information Policy and the Office of the Attorney General continue to wrongfully withhold the requested records from Plaintiffs.

### State Department

52. By letter dated March 21, 2017, the State Department acknowledged receipt of the Request and assigned it Case Control Number F-2017-06067. The State Department denied Plaintiffs' request for expedited processing and granted their request for a fee waiver. The State Department further informed the ACLU that "[u]nusual circumstances . . . may arise that would require additional time to process your request."

53. To date, the State Department has neither released responsive records nor explained its failure to do so. Plaintiffs have exhausted all administrative remedies because the State Department has failed to comply with the time limit for responding to the Request under FOIA.

54. The State Department continues to wrongfully withhold the requested records from Plaintiffs.

## CAUSES OF ACTION

55. The failure of Defendants to make a reasonable effort to search for records responsive to the Request violates FOIA, 5 U.S.C. § 552(a)(3), and Defendants' corresponding regulations.

56. The failure of Defendants to promptly make available the records sought by the Request violates FOIA, 5 U.S.C. § 552(a)(3)(A), (a)(6)(A), and Defendants' corresponding regulations.

57. The failure of Defendants to process Plaintiffs' request expeditiously and as soon as practicable violates FOIA, 5 U.S.C. § 552(a)(6)(E), and Defendants' corresponding regulations.

58. The failure of Defendants DOD, specifically its components the Office of the Secretary of Defense and Joint Staff and CENTCOM, and DOJ, specifically its components the Office of Information Policy, on behalf of the Office of the Attorney General, and the Office of Legal Counsel, to grant Plaintiffs' request for a waiver of search, review, and duplication fees violates FOIA, 5 U.S.C. § 552(a)(4), (a)(6), and Defendants' corresponding regulations.

59. The failure of Defendants DOD, specifically its component the Office of the Secretary of Defense and Joint Staff, and DOJ, specifically its components the Office of Information Policy, on behalf of the Office of the Attorney General, and the Office of Legal Counsel, to grant Plaintiffs' request for a limitation of fees violates FOIA, 5 U.S.C. § 552(a)(4), (a)(6), and Defendants' corresponding regulations.

## REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Order Defendants to conduct a thorough search for all responsive records;

B. Order Defendants to immediately process and release any responsive records;

C. Enjoin Defendants from charging Plaintiffs search, review, or duplication fees for the processing of the Request;

D. Award Plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

E. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Hina Shamsi*

Hina Shamsi
Brett Max Kaufman
Anna Diakun
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2654
hshamsi@aclu.org

May 8, 2017