# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION and AMERICAN CIVIL LIBERTIES UNION FOUNDATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | No. 17 Civ. 3391 (PAE) |
| | ) | |
| DEPARTMENT OF DEFENSE, CENTRAL INTELLIGENCE AGENCY, DEPARTMENT OF JUSTICE, and DEPARTMENT OF STATE, | ) ) ) ) | |
| Defendants. | ) ) | |

## DECLARATION OF ERIC F. STEIN

Pursuant to 28 U.S.C. § 1746, I, Eric F. Stein, declare and state as follows:

1.      I am the Director of the Office of Information Programs and Services ("IPS") of the United States Department of State (the "Department" or "State") and have served in this capacity since January 22, 2017.  Previously, I served as the Acting Director since October 16, 2016, and as the Acting Co-Director since March 21, 2016.

2.      The core responsibilities of IPS include:  (1) responding to records access requests made by the public (including under the Freedom of Information Act, the Privacy Act, and the mandatory declassification review requirements of Executive Order No. 13526 of December 29, 2009, governing classified national security information), by members of Congress, by other government agencies, and those made pursuant to judicial process, such as subpoenas, court orders and discovery requests; (2) records management; (3) privacy protection; (4) national security classification management and declassification review; (5) corporate records archives

management; (6) research; (7) operation and management of the Department's library; and (8) technology applications that support these activities.

3.      In my current capacity, I am the Department official immediately responsible for responding to requests for records under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, and other records access provisions.  As the Director of IPS, I have original classification authority and am authorized to classify and declassify national security information.

4.      Prior to serving in this capacity, I worked directly for the Department's Deputy Assistant Secretary ("DAS") for Global Information Services ("GIS") and served as a senior advisor and deputy to the DAS on all issues related to GIS offices and programs, which include IPS.

5.      I make the following statements based upon my personal knowledge, which in turn is based upon information furnished to me in the course of my official duties.  I am familiar with the efforts of Department personnel to process the subject requests, and I am in charge of coordinating the agency's search and recovery efforts with respect to those requests.

6.      The American Civil Liberties Union and American Civil Liberties Union Foundation ("Plaintiffs") indicated through counsel that they seek to challenge the Department's withholdings on four (4) documents.  With respect to these documents, the Department is withholding information because the information is classified, pre-decisional and deliberative, protected from disclosure under the presidential communications privilege, or because disclosure would constitute a clearly unwarranted invasion of an individual's personal privacy.

7.      This declaration explains the FOIA exemptions applied in processing the responsive records.  A *Vaughn* index (section IV below) provides a detailed description of the

2

information withheld and the justifications for those withholdings with respect to the four

documents whose withholdings Plaintiffs have indicated they seek to challenge.

### I. ADMINISTRATIVE PROCESSING OF PLAINTIFF'S REQUEST

8.    On March 15, 2017, Plaintiffs submitted by fax a FOIA request to the Department

(Exhibit 1) seeking:

(1) The legal and policy bases in domestic, foreign, and international law upon which the
government evaluated or justified the al Ghayil Raid, including but not limited to
records related to the designation of parts of Yemen as "areas of active hostilities,"
and the legal and factual basis that the government uses in designating such areas;
(2) The process by which the government approved the al Ghayil Raid, including which
individuals possessed decision-making authority and the evidentiary standard by
which the factual evidence was evaluated to support the determination;
(3) The process by which the decision was made to designate three parts of Yemen as
"areas of active hostilities";
(4) Before-the-fact assessments of civilian or bystander casualties of the raid and the
"after-action" investigation into the raid; and
(5) The number and identities of individuals killed or injured in the al Ghayil Raid,
including by not limited to the legal status of those killed or injured, with these
separated out by individuals intentionally targeted and collateral casualties or injuries.

9.    By letter dated March 21, 2017 (Exhibit 2), IPS acknowledged receipt of

Plaintiffs' FOIA request and assigned it Case Control Number F-2017-06067.

10.    By letter dated November 17, 2017 (Exhibit 3), IPS informed Plaintiffs that in

response to their FOIA request, it had conducted searches and located responsive documents.

The Department released two documents in full and nine documents in part, and denied one

document in full.

11.    By letter dated December 15, 2018 (Exhibit 4), the Department released 9

documents in full and 63 documents in part, and denied 65 documents in full.  Also, the

Department informed Plaintiffs that nine documents had been referred to another agency for

direct response.

3

12.      By letter dated July 18, 2018 (Exhibit 5), the Department released supplemental material in four documents that had been previously withheld in part.

13.      By letter dated September 28, 2018 (Exhibit 6), the Department released additional supplemental material in one document that had been previously withheld in part.

## II. THE SEARCH PROCESS

14.      When State receives a FOIA request, IPS evaluates the request to determine which offices, overseas posts, or other records systems within State may reasonably be expected to contain the records requested.  This determination is based on the description of the records requested and requires a familiarity with the holdings of State's records systems, applicable records disposition schedules, and the substantive and functional mandates of numerous Department offices and Foreign Service posts and missions.

15.      Each office within State, as well as each Foreign Service post and mission, maintains files concerning foreign policy and other functional matters related to the daily operations of that office, post, or mission.  These files consist generally of working copies of documents, information copies of documents maintained in the Central Foreign Policy Records collection, and other documents prepared by or furnished to the office in connection with the performance of its official duties, including electronic copies of documents and e-mail messages.

16.      After reviewing Plaintiff's requests, IPS determined that the following offices or records systems were reasonably likely to have documents responsive to Plaintiffs' requests: the Executive Secretariat ("S/ES"), the Office of the Legal Adviser ("L"), the Bureau of Near Eastern Affairs ("NEA"), the Bureau of Political-Military Affairs ("PM"), and the Bureau of Counterterrorism and Countering Violent Extremism ("CT").

4

17.    When conducting a search in response to a FOIA request, State relies on the knowledge and expertise of the employees of each bureau/office/post to determine the files and locations reasonably likely to maintain responsive records and the best means of locating such records, as these employees are in the best position to know how their files are organized. Likewise, those employees are also in the best position to determine which search terms would yield potentially responsive records, because they are most knowledgeable about the organization of the records systems in use.  The searches for responsive records were conducted by individuals who were knowledgeable of both Plaintiffs' FOIA request and the particular records being searched.  In total, State released 23 pages in full and 162 pages in part, and denied 304 pages in full.

18.    Because I understand through counsel that Plaintiffs are not challenging the adequacy of the State Department's searches for responsive documents, the agency's searches are not further addressed herein.

### III. FOIA EXEMPTIONS CLAIMED

### FOIA Exemption 1 – Classified Information

19.    5 U.S.C. § 552(b)(1) states that the FOIA does not apply to matters that are:

(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order;

20.    The Department withheld certain information under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), pursuant to E.O. 13526 sections 1.4(a), (b), (c), and (d).  Section 1.4(a) protects military plans, weapons systems, or operations.  Section 1.4(b) protects foreign government information.  Section 1.4(c) protects intelligence activities (including covert action), intelligence sources or methods, or cryptology.  Section 1.4(d) protects foreign relations or foreign activities

of the United States, including confidential sources.  The withheld information includes

information classified at the SECRET level.  Section 1.2 of E.O. 13526 states:

> "Secret" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security that the original classification authority is able to identify or describe.

21.     The information withheld under Exemption 1, 5 U.S.C. § 552(b)(1), continues to

meet the classification criteria of E.O. 13526 and the Department has not previously authorized

or officially acknowledged public release of this information.

### FOIA Exemption 5 – Privileged Information

22.     5 U.S.C. § 552(b)(5) states that the FOIA does not apply to:

> inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency....

23.     Exemption 5, 5 U.S.C. § 552(b)(5), protects from disclosure information that is

normally privileged in the civil discovery context, including information that is protected by the

deliberative process privilege.

24.     The deliberative process privilege ("DPP") protects the confidentiality of candid

views and advice of U.S. Government officials in their internal deliberations related to policy

formulation and administrative direction.  Disclosure of material containing the details of

internal discussions held in the course of formulating a response could reasonably be expected to

chill the open and frank exchange of comments, recommendations, and opinions that occurs

between Department officials.  In addition, it would severely hamper the ability of responsible

Department officials to formulate and carry out executive branch programs if preliminary

comments, opinions, and ideas were shared with the public.  In each case where such information

has been withheld pursuant to Exemption 5 and the deliberative process privilege, disclosure of

this information, which is pre-decisional and deliberative, and contains selected factual material

intertwined with opinion, would inhibit candid internal discussions and the expression of recommendations and judgments regarding current issues and preferred courses of action by Department personnel.

25.    Additionally, the Department withheld certain information under FOIA Exemption 5 pursuant to the presidential communications privilege, to protect discussions between close presidential advisors and senior State officials preparing information or advice for potential presentation to the President.  The information withheld pursuant to this privilege consists of summaries of discussions in meetings of the interagency Deputies Committee. National Security Presidential Memorandum 4 of April 4, 2017, provides that the Deputies Committee is "the senior sub-Cabinet interagency forum for consideration of, and where appropriate, decision making on, policy issues that affect the national security interests of the United States."  The Deputies Committee meetings at issue involved discussions between close presidential advisors and members of their staffs—who have broad and significant responsibility for gathering information and preparing advice for potential presentation to the President in foreign policy or national security matters—as well as senior officials of the State Department and other agencies.  In this case, disclosure of the information withheld under this privilege would reveal the process by which the President receives national security advice from close advisors, the substantive deliberations of the Deputies Committee, and the advice itself.

## FOIA Exemption 6 – Personal Privacy

26.    5 U.S.C. § 552(b)(6) provides that the FOIA exempts from public disclosure:

> personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

27.    As described below, the Department has withheld certain personal information, such as names, email addresses, phone numbers, and signatures, under Exemption 6 because its

release could result in unsolicited attention and harassing inquiries. Certain names of employees in the Bureaus of Counterterrorism and Countering Violent Extremism ("CT") have been withheld due to the sensitive nature of the work conducted for the Department relevant to this request, which is focused on a specific U.S. counterterrorism operation.

28.     The information withheld is personal to an individual, and there is clearly a privacy interest involved that is more than *de minimis*. I am required, therefore, to determine whether there exists any public interest in disclosure and to weigh any such interest against the extent of the invasion of privacy.

29.     As for all of the information withheld pursuant to Exemption 6, I have concluded that (1) the information implicates a privacy interest that more than *de minimis*; and (2) disclosure of the information would not serve the core purpose of the FOIA, i.e., it would not disclose information about "what the government is up to." Accordingly, I have determined that the privacy interests clearly outweigh any public interest in disclosure of such personal information, and disclosure of the information withheld would result in a clearly unwarranted invasion of personal privacy.

### IV. VAUGHN

30.     **Document C06432231** is a two-page intra-agency email sent on a classified system providing a readout of deliberations from an interagency meeting of the Deputies Committee held on January 26, 2017. The email was originally and is currently classified SECRET, and the Department released it in part.

31.     The Department withheld certain information in the email under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), pursuant to E.O. 13526 sections 1.4(a), 1.4(b), 1.4(c), and 1.4(d). The document contains information about military plans and operations, including planned and

contingency U.S. military activities.  Release of this information reasonably could be expected to cause serious damage to the national security by jeopardizing U.S. military operations by revealing information that could be used to anticipate and counter them, including by revealing a contingency that could cause the cessation of certain military activities.  The document also contains foreign government information, including the views of a senior foreign official about U.S. activities that were conveyed on a confidential basis.  Release of this information reasonably could be expected to cause serious damage to the national security by reducing the likelihood that foreign officials will be willing to convey sensitive information to the U.S. Government.  The document also contains information about intelligence activities, including a proposal for an intelligence activity.  Release of this information reasonably could be expected to cause serious damage to the national security by endangering the efficacy of U.S. intelligence activities.  The document also contains information about foreign relations and foreign activities of the United States, including contingency actions to be taken in the event of particular political developments, including planned contact with a particular identified official at a particular time.  Release of this information reasonably could be expected to cause serious damage to the national security by undermining U.S. foreign policy by revealing diplomatic strategies and tactics that depend on discretion.

32.    The Department has not previously authorized or officially acknowledged public release of the information withheld under Exemption 1.  Some of the information withheld under this exemption does not concern the operation that is the subject of the FOIA request at issue in this litigation.  Other information withheld under this exemption concerns discussion of possible contingencies that could occur during the operation, and potential responses to them, none of which has been officially acknowledged.

33.    The Department also withheld certain information in the email under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.  The email summarizes interagency deliberations about a specific proposal. The information withheld from this email pursuant to the deliberative process privilege does not relate simply to the President's approval of the operation that is the subject of this litigation.  Rather, the Department withheld predecisional deliberations about contingencies that could occur before or in the course of the operation, and potential ways to address such contingencies.  The release of this information could reasonably be expected to chill the Department's discussion in future interagency meetings because Department personnel would be less likely to identify possible contingencies (including ones that may reflect negatively on other U.S. Government agencies or foreign governments) and potential responses (including ones opposed by other U.S. Government agencies or that would raise foreign governments' concerns) if such information were subject to public disclosure.  The Department also withheld predecisional deliberations about possible steps that could be taken in the future in connection with the operation, and whether to take such steps.  The release of this information could reasonably be expected to chill the Department's discussion in future interagency meetings, including discussion of possible steps that could be taken in connection with such operations (including steps that may not ultimately be taken, including because of the opposition of other U.S. Government agencies), because Department personnel would be less likely to identify such possible steps if such information were subject to public disclosure.  Such a chilling effect would diminish the quality of the Department's contribution to U.S. Government decision-making.

34.    The Department also withheld certain information in the email under FOIA Exemption 5, 5 U.S.C. § 552(b)(5), pursuant to the presidential communication privilege.  The

information withheld under this privilege consists of a summary ("readout") of a meeting of the Deputies Committee, including descriptions of comments by senior officials of the State Department and other agencies. The information withheld by the Department pursuant to this privilege does not relate to discussions purely internal to the State Department. Rather, the withheld content of the readout includes descriptions of points raised and arguments made within the meeting of the Deputies Committee (a Presidential advisory body established as part of the National Security Council structure) by senior officials from State and other U.S. Government agencies, a decision made by the Deputies Committee, a specific issue on which the Deputies Committee is described as taking no decision, and an interpretation of the Deputies Committee's position on a specific issue. The readout was provided by the Counselor of the Department, a senior Department official who attended the Deputies Committee meeting, to a small group of Department personnel who had a need to know the information to perform their respective duties within the Department. The Department personnel were primarily in the Near Eastern Affairs Bureau, the Bureau of Counterterrorism and Countering Violent Extremism, the Policy Planning Staff, and the Office of the Legal Adviser, all of which had a direct connection to the operation. Disclosure of this information would inhibit the ability of the President, his close advisors, and members of their staffs who have broad and significant responsibility for gathering information in the course of preparing advice for potential presentation to the President in matters that implicate the President's decisions concerning foreign policy or national security, to gather information from senior officials of State and other agencies, identify decisions to be presented to the President (including in cases where there is disagreement between U.S. Government agencies), and advise the President on those decisions. This information has been closely held

11

within the Executive Branch. The substance of the Deputies Committee's deliberations and discussions during the meeting summarized in this document has not been publicly revealed.

35.     The Department also withheld the name of a CT employee under FOIA Exemption 6, 5 U.S.C. § 552 (b)(6), because disclosure would result in a clearly unwarranted invasion of personal privacy. The release of the name of this individual, who was involved in sensitive U.S. Government counter-terrorism planning, could reasonably be expected to subject the person to harassment and/or intimidation and could have a detrimental effect on the employee's ability to carry out his/her duties. Release of this name would shed no light on the operations and activities of the U.S. Government.

36.     The Department conducted a line-by-line review of the document and released all meaningful, non-exempt information that could be reasonably segregated.

37.     **Documents C06432239, C06432636**, and **C06432854** are identical copies of a three-page intra-agency email sent on a classified system providing a readout of deliberations from an interagency meeting of the Deputies Committee held on January 6, 2017. The content of the email was originally and is currently classified SECRET, and the Department released the document in part.

38.     The Department withheld certain information in the email under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), pursuant to E.O. 13526 sections 1.4(a), 1.4(b), 1.4(c), and 1.4(d). The document contains information about military plans and operations, including detailed discussion of the modalities of potential U.S. military activities. Release of this information reasonably could be expected to cause serious damage to the national security by jeopardizing U.S. military operations by revealing information that could be used to anticipate and counter them, and by allowing adversaries to plan and carry out engagements with detailed knowledge of U.S.

12

capabilities, force levels and intentions.  The document also contains foreign government

information, including the views of foreign officials about military activities and their plans for

them provided in confidence.  Release of this information reasonably could be expected to cause

serious damage to the national security by reducing the likelihood that foreign officials will be

willing to convey sensitive national security information in confidence to the U.S. Government,

for fear that expectation of confidentiality will be breached.  The document also contains

information about intelligence activities, including possible assessments from members of the

intelligence community.  Release of this information reasonably could be expected to cause

serious damage to the national security by endangering the efficacy of U.S. intelligence

activities.  The document also contains information about foreign relations and foreign activities

of the United States, including details of potential U.S. engagements with regional partners and

possible reactions by regional adversaries.  Release of this information reasonably could be

expected to cause serious damage to the national security by undermining U.S. foreign policy by

revealing diplomatic strategies and tactics that depend on discretion, including conditions under

which to conduct certain activities and factors considered in deciding whether to encourage or

support particular foreign governments' initiatives.

   39. The Department has not previously authorized or officially acknowledged public

release of the information withheld under Exemption 1.  The information withheld under this

exemption includes a great degree of detail about particular plans, possible contingencies, and

potential consequences relating to the operation that have not been officially acknowledged.

   40. The Department also withheld certain information under FOIA Exemption 5, 5

U.S.C. § 552(b)(5), pursuant to the deliberative process privilege.  Specifically, the Department

withheld predecisional deliberations about a wide range of issues concerning the operation,

13

including contingencies that could occur before or in the course of the operation, and potential

ways to address such contingencies. These discussions were predecisional because they predated

both the President's decision whether to approve the operation that is the subject of this litigation

and the Deputies Committee's recommendation to the President, and they constituted part of the

Deputies Committee's deliberative process of formulating a recommendation to the President to

aid in his decision-making. The release of this information could reasonably be expected to chill

the Department's discussion in future interagency meetings of possible contingencies and

responses to them, because Department personnel would be less likely to identify possible

contingencies (including ones that may reflect negatively on other U.S. Government agencies or

foreign governments) and potential responses (including ones opposed by other U.S.

Government agencies or that would raise foreign governments' concerns) if such information

were subject to public disclosure. The Department also withheld predecisional deliberations

about possible steps that could be taken in the future in connection with the operation, and

whether to take such steps. The release of this information could reasonably be expected to chill

the Department's discussion in future interagency meetings, including discussion of possible

steps that could be taken in connection with such operations (including steps that may not

ultimately be taken, including because of the opposition of other U.S. Government agencies),

because Department personnel would be less likely to identify such possible steps if such

information were subject to public disclosure. Such a chilling effect would diminish the quality

of the Department's contribution to U.S. Government decision making.

   41. The Department also withheld the content of the email under FOIA Exemption 5,

5 U.S.C. § 552(b)(5), pursuant to the presidential communication privilege. The information

withheld under this privilege consists of a summary ("readout") of a meeting of the Deputies

Committee, including descriptions of comments by senior officials of the State Department and other agencies. This information has been closely held within the Executive Branch. The substance of the Deputies Committee's deliberations and discussions during the meeting summarized in this document has not been publicly revealed. Disclosure of this information would inhibit the ability of the President and his close advisors, including senior State officials, to engage in effective communications and decision-making.

42.     The Department also withheld the names of CT employees under FOIA Exemption 6, 5 U.S.C. § 552 (b)(6), because disclosure would result in a clearly unwarranted invasion of personal privacy. The release of the names of these individuals, who were involved in sensitive U.S. Government counterterrorism planning, could reasonably be expected to subject the persons to harassment and/or intimidation and could have a detrimental effect on the employee's ability to carry out his/her duties. Release of these names would shed no light on the operations and activities of the U.S. Government.

43.     The Department conducted a line-by-line review of the documents and released all meaningful, non-exempt information that could be reasonably segregated.

## V. CONCLUSION

44.     In summary, the Department searched all locations likely to contain relevant documents responsive to Plaintiff's FOIA request. State retrieved 158 records responsive to this FOIA request. Of those records, 11 were released in full, 72 were released in part, and 66 were withheld in full. The remaining nine documents were referred to another agency for direct response to Plaintiff. State has conducted a line-by-line review of all documents addressed herein for non-exempt information and has released meaningful, nonexempt information when reasonably segregable.

15

\*\*\*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this ___29th___ day of March 2019, Washington, D.C.

Eric F. Stein

16