UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN CIVIL LIBERTIES UNION and
AMERICAN CIVIL LIBERTIES UNION FOUNDATION,

Plaintiffs,

v.

DEPARTMENT OF DEFENSE, CENTRAL INTELLIGENCE
AGENCY, DEPARTMENT OF JUSTICE, and
DEPARTMENT OF STATE,

Defendants.

17 Civ. 3391 (PAE)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS
DEPARTMENT OF DEFENSE AND DEPARTMENT OF
STATE AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
Attorney for Defendants
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone:  (212) 637-2774
Facsimile:  (212) 637-2702

REBECCA S. TINIO
Assistant United States Attorney
- Of Counsel -

**TABLE OF CONTENTS**

ARGUMENT ....................................................................................................................1

I.    Defendants Properly Withheld Classified Information from the Challenged
      Records Pursuant to Exemption 1 .....................................................................1

      A.    Standards Relating to Exemption 1, Official Acknowledgments, and Legal
            Analysis...........................................................................................................3

      B.    Defendants Have Not Improperly Withheld any Officially Acknowledged
            Information, or Segregable Legal Analysis, from the Challenged Records
            Pursuant to Exemption 1 ...............................................................................6

II.   DOD and DOS Properly Withheld Privileged Information Pursuant to
      Exemption 5 ...................................................................................................12

      A.    "Effective Law and Policy" Exceptions to Exemption 5......................................12

      B.    Defendants Properly Withheld Information Protected by the Deliberative
            Process Privilege...........................................................................................16

      C.    Defendants Properly Withheld Information Protected by the Presidential
            Communications Privilege...............................................................................22

III.  Defendants Re-Reviewed the Challenged Records in Good Faith and Produced All
      Reasonably Segregable Portions Thereof .........................................................25

CONCLUSION................................................................................................................25

# TABLE OF AUTHORITIES

Cases                                                                    Page(s)

*ACLU v. CIA*,
    109 F. Supp. 3d 220 (D.D.C. 2015) .......................................................... 5, 12, 19. 20

*ACLU v. CIA*,
    710 F.3d 422 (D.C. Cir. 2013) ............................................................................. 6, 7

*ACLU v. DOJ*,
    229 F. Supp. 3d 259 (S.D.N.Y. 2017) ..................................................................... 6

*ACLU v. DOJ*,
    2015 WL 4470192 (S.D.N.Y. July 16, 2015) .......................................................... 4

*ACLU v. DOJ*,
    2016 WL 8259331 (S.D.N.Y. Aug. 8, 2016) ............................................................ 4

*ACLU v. NSA*,
    925 F.3d 576 (2d Cir. 2019) ..................................................................... passim

*Afshar v. Dep't of State*,
    702 F.2d 1125 (D.C. Cir. 1983) ........................................................................... 13

*Amnesty Int'l USA v. CIA*,
    728 F. Supp. 2d 479 (S.D.N.Y. 2010) .................................................................... 4

*Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. DOJ*,
    697 F.3d 184 (2d Cir. 2012) ...................................................................... 13, 14, 15

*Common Cause v. IRS*,
    646 F.2d 656 (D.C. Cir. 1981) ........................................................................... 15

*Conti v. DHS*,
    2014 WL 1274517 (S.D.N.Y. Mar. 24, 2014) ....................................................... 25

*CREW v. DHS*,
    2008 WL 2872183 (D.D.C. July 22, 2008) ........................................................... 23

*Davis v. DOJ,*
    968 F.2d 1276 (D.C. Cir. 1992) ............................................................... 13

*Edmonds v. FBI,*
    272 F. Supp. 2d 35, 49 (D.D.C. 2003) ...................................................... 7

*Elec. Privacy Info. Ctr. v. DOJ,*
    584 F. Supp. 2d 65 (D.D.C. 2008) .......................................................... 13

*Hudson River Sloop Clearwater, Inc. v. Dep't of Navy,*
    891 F.2d 414 (2d Cir. 1989) ...................................................................... 4

*In re Sealed Case,*
    121 F.3d 729 (D.C. Cir. 1997) ................................................................. 23

*Judicial Watch, Inc. v. DOD,*
    847 F.3d 735 (D.C. Cir. 2017) ................................................................. 15

*Judicial Watch, Inc. v. DOJ,*
    365 F.3d 1108 (D.C. Cir. 2004) ............................................................... 24

*Klayman v. CIA,*
    170 F. SUpp. 3d 114, 124 (D.D.C. 2016) ................................................... 7

*N.Y. Times Co. v. DOJ,*
    756 F.3d 100 (2d Cir. 2014) ....................................................... 3, 4, 5, 11

*N.Y. Times Co. v. DOJ,*
    806 F.3d 682 (2d Cir. 2015) ......................................................... 5, 8, 14

*N.Y. Times Co. v. FBI,*
    297 F. Supp. 3d 435 (S.D.N.Y. 2017) ................................................. 3, 11

*Nat'l Council of La Raza v. DOJ,*
    411 F.3d 350 (2d Cir. 2005) ............................................................ 14, 21

*NLRB v. Sears, Roebuck, & Co.,*
    421 U.S. 132 (1975) ................................................................................ 14

*Osen LLC v. United States Cent. Command*,
    375 F. Supp. 3d 409 (S.D.N.Y. 2019) ..................................................................... 3, 4

*Osen LLC v. United States Dep't of State*,
    360 F. Supp. 3d 258 (S.D.N.Y. 2019) ................................................................... 5, 11

*Privacy Info. Ctr. v. DOJ*,
    584 F. Supp. 2d 65 (D. D.C. 2008) ........................................................................ 13

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
    421 U.S. 168 (1975) ............................................................................................... 14

*Trans Union LLC v. FTC*,
    141 F. Supp. 2d 62 (D.D.C. 2001) ......................................................................... 13

*Wilson v. CIA*,
    586 F.3d 171 (2d Cir. 2009) .................................................................................... 3

*Wolf v. CIA*,
    473 F.3d 370 (D.C. Cir. 2007) ................................................................................. 4

*Wood v. FBI*,
    432 F.3d 78 (2d Cir. 2005) ............................................................................... 14, 19

Statutes

5 U.S.C. § 552(b) .......................................................................................................... 24

Rules

Federal Rule of Civil Procedure 56 ................................................................................ 1

Executive Order 13,526 ............................................................................................... 1, 2

Defendants the Department of Defense ("DOD") and Department of State ("DOS") (together, "Defendants")[1] respectfully submit this reply memorandum of law in further support of their motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, and in opposition to Plaintiffs' cross-motion for summary judgment. Only twenty-three documents remain at issue at this stage: four DOS documents and nineteen DOD documents (together, the "Challenged Records"). Defendants' declarations logically and plausibly establish that the Challenged Records are protected from disclosure, in whole or in part, because they are currently and properly classified and/or privileged, and thus exempt under FOIA Exemptions 1 and/or 5. In their opposition and cross-motion, Plaintiffs do not meet their burden to demonstrate that any exceptions to Exemptions 1 and 5 apply to the information that Defendants have withheld. Therefore, the Court should grant summary judgment to Defendants, and deny Plaintiffs' cross-motion.

## ARGUMENT[2]

### I.    Defendants Properly Withheld Classified Information from the Challenged Records Pursuant to Exemption 1

Defendants withheld currently and properly classified information, pursuant to Exemption 1, from each of the remaining Challenged Records. Plaintiffs do not contest that the

---

[1] Because Plaintiffs have withdrawn all challenges to the FOIA responses of the Central Intelligence Agency ("CIA") in this matter, *see* Dkt. No. 118 ("Pls. Br.") at 11 n.41, CIA is no longer a party to the pending motions.

[2] Plaintiffs have withdrawn their challenge to the adequacy of DOD's search for CENTCOM/019. Pls. Br. at 11 n.41. Furthermore, the application of Exemption 3 to certain records processed or referred by CIA, *see* Dkt. No. 112 ("Govt. Br.") at 30-31, is no longer at issue, because Plaintiffs do not challenge the withholding in full or in part of any of those documents. *See* Pls. Br. at 11. Therefore, the only issues still in dispute pertain to the application of Exemptions 1 and 5 to certain documents released by DOD and DOS. *Id.* Of those documents, Plaintiffs no longer challenge the government's withholding of information in CENCOM/036-038, CENTCOM/330-334, and JS/059-062. *Id.* at 11 n.41.

withheld information satisfies all four of the requirements of Executive Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009), for classification, namely that: (1) an "original classification authority" must classify the information; (2) the information must be "owned by, produced by or for, or . . . under the control of the United States Government"; (3) the information must pertain to one or more of eight protected categories of information listed in the Executive Order; and (4) an original classification authority must "determine[] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security" and be "able to identify or describe the damage."  E.O. 13,526 § 1.1(a)(1)-(4); *see* Govt. Br. at 20-21. Indeed, it is not surprising that the Challenged Records contain currently and properly classified information, given that Plaintiffs seek documents relating to the Government's recent planning and execution of overseas military operations.  Govt. Br. at 29.  The declarations submitted by DOD and DOS set forth logical and plausible justifications for the withholding of information pertaining to five of the eight protected categories of information listed in the Executive Order: military plans, weapons systems, or operations (E.O. 13,526 § 1.4(a)); foreign government information (*id.* § 1.4(b)); intelligence activities (including covert action), intelligence sources or methods, or cryptology (*id.* § 1.4(c)); foreign relations or foreign activities of the United States (*id.* § 1.4(d)); and vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security (*id.* § 1.4(g)).  *See* Govt. Br. at 20-29; Declaration of Major General Jim Hecker, Dated April 5, 2019 (Dkt. No. 113) ("First DOD Dec."); Declaration of Eric F. Stein, Dated March 29, 2019 (Dkt. No. 114) ("First DOS Dec.").

Rather, Plaintiffs assert that Defendants may not withhold some or all of the classified information contained in the Challenged Records because (they claim) the government has "officially acknowledged" that information, or because (they speculate) the information may be

easily segregable "pure legal analysis." Pls. Br. at 13-16. Plaintiffs fall short, however, of carrying their burden to point to officially acknowledged, publicly disclosed information that is as specific as and matches the withheld information. Most of the supposed "official acknowledgments" to which Plaintiffs point are, at best, very general statements about the United States' foreign relations and foreign activities, which do not disclose the specific operational details pertaining to the al Ghayil Raid and other military operations that Defendants withheld from the Challenged Records pursuant to Exemption 1. And Plaintiffs' speculation that Defendants have improperly withheld reasonably segregable "pure legal analysis" is incorrect.

**A. Standards Relating to Exemption 1, Official Acknowledgments, and Legal Analysis**

In *Wilson v. CIA*, 586 F.3d 171 (2d Cir. 2009), the Second Circuit held that information validly withheld pursuant to a FOIA exemption is deemed to have been officially disclosed, thereby losing its exempt status, *only* if it (1) "is as specific as the information previously released," (2) "matches the information previously disclosed," and (3) was "made public through an official and documented disclosure." *Id.* at 186 (quotation marks and alterations omitted). *Wilson* characterized this standard as a "strict test." *Id.* In 2014, the Second Circuit confirmed that *Wilson* "remains the law of this Circuit." *N.Y. Times Co. v. DOJ*, 756 F.3d 100, 120 n.19 (2d Cir. 2014), *opinion amended on denial of reh'g*, 758 F.3d 436 (2d Cir. 2014), *supplemented*, 762 F.3d 233 (2d Cir. 2014). Although the Court observed that *Wilson*'s matching requirement may not "require absolute identity," the Court found that the legal analysis in the Office of Legal Counsel memorandum at issue was "virtually parallel" to legal analysis that had previously been officially released. *Id.* at 116. And the *New York Times* Court sustained the withholding of the entire factual section of the memorandum, finding that the government's waiver applied only to the portions that explain legal reasoning. *Id.* at 117.

The Second Circuit and district courts in this district—including the district court on remand in the *New York Times* case—have continued to apply the three-part *Wilson* test, including the specificity and matching requirements, in evaluating official acknowledgment claims.  *See, e.g.*, *Johnson v. CIA*, 18-1826 (2d Cir. June 28, 2019) (slip op.) (summary order); *Osen LLC v. United States Cent. Command*, 375 F. Supp. 3d 409, 419 (S.D.N.Y. 2019); *N.Y. Times Co. v. FBI*, 297 F. Supp. 3d 435, 449 (S.D.N.Y. 2017); *ACLU v. DOJ*, No. 15 Civ. 1954 (CM), 2016 WL 8259331, at *3-4 (S.D.N.Y. Aug. 8, 2016) (applying the *Wilson* test "stringently" on remand), *vacated on other grounds*, 894 F.3d 490 (2d Cir. 2018); *ACLU v. DOJ*, No. 12 Civ. 794 (CM), 2015 WL 4470192, at *3-4 (S.D.N.Y. July 16, 2015) (same), *aff'd in part, rev'd in part*, 844 F.3d 126 (2d Cir. 2016).  In addition, courts have consistently affirmed that to establish an official acknowledgment, "the *specific* information sought by the plaintiff must already be in the public domain by official disclosure"; "[p]rior disclosure of *similar* information does not suffice."  *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 512-13 (S.D.N.Y. 2010) (quoting *Wolf v. CIA*, 473 F.3d 370, 378-79 (D.C. Cir. 2007)) (emphasis added); *see also, e.g.*, *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 421 (2d Cir. 1989) (Exemption 1 "may not be invoked to prevent public disclosure when the government has *officially* disclosed the *specific* information being sought.") (emphasis in the original).

In applying *Wilson*, courts have held that an "official acknowledgment" does not compel the disclosure of other classified information where the prior disclosure is broader and more general than (and therefore not "as specific as" and not "matching") the withheld information. This is so even where the prior disclosure is similar to or even partially overlaps with the withheld information.  For example, in a recent case, a court in this district held that prior general disclosures about the risks of certain kinds of explosive devices ("EFPs") did not foreclose the

defendant agency from withholding specific photographs of EFP strikes, which would reveal more detailed information about "the connection of specific strikes to specific damage." *Osen LLC*, 375 F. Supp. 3d at 420-21 (also deferring to the defendant agency's logical and plausible determinations of the risks associated with releasing the information); *see also, e.g.*, *N.Y. Times Co.*, 756 F.3d at 113 (holding that even though legal analysis in OLC memorandum must be disclosed, factual sections containing details of specific operations remained classified and exempt in their entirety); *ACLU v. CIA*, 109 F. Supp. 3d 220, 240-43 (D.D.C. 2015) (although the government officially acknowledged general information about its drone program and the program's legal basis, those disclosures did not require disclosure of specific facts about particular drone strikes), *aff'd*, 640 Fed. Appx. 9 (D.C. Cir. Apr. 21, 2016) (per curiam); *Osen LLC v. United States Dep't of State*, 360 F. Supp. 3d 258, 264 (S.D.N.Y. 2019) (holding that a report and press statement generally describing leaked documents failed the *Wilson* test, because they did not actually "discuss[] specifically any of the documents leaked or their content"); *id.* at 265 (opining that the Second Circuit's further explication of the "matching" prong of *Wilson* "does not imply that any overlap in information satisfies the matching requirement or that courts should not consider the specific nuances and contexts of the documents being compared. . . . Here, the disclosed documents, while they may overlap to some degree with the subjects of conversations in the cables, do not relate the same discussions" and therefore fail the *Wilson* test).

Plaintiffs are incorrect to suggest that legal analysis cannot be classified and exempt from disclosure under Exemption 1.  The Second Circuit has held on more than one occasion, including very recently, that legal analysis may be properly classified in some circumstances, including where "the very fact that legal analysis was given concerning a planned operation

would risk disclosure of the likelihood of that operation," or where it is "so intertwined with facts entitled to protection that disclosure of the analysis would disclose such facts." *ACLU v. NSA*, 925 F.3d 576, 601 (2d Cir. 2019) (quoting *N.Y. Times v. DOJ*, 756 F.3d at 119). Thus, agencies may withhold legal analysis under Exemption 1 when its disclosure would tend to reveal the underlying classified information. *See, e.g.*, *N.Y. Times Co. v. DOJ*, 806 F.3d 682, 687 (2d Cir. 2015) (concluding that the government could withhold in full several legal memoranda where "[i]t would be difficult to redact any arguable disclosable lines of legal analysis" without disclosing protected information); *ACLU v. DOJ*, 229 F. Supp. 3d 259, 267 (S.D.N.Y. 2017) (with respect to a legal memorandum, opining that "it is unlikely that each and every word in the Memorandum is classified. But . . . [i]f sufficient context was disclosed to make the non-exempt material meaningful, the circumstances warranting the classification of the Memorandum would be revealed. FOIA does not require redactions and disclosure to this extent.").

### B. Defendants Have Not Improperly Withheld any Officially Acknowledged Information, or Segregable Legal Analysis, from the Challenged Records Pursuant to Exemption 1

Plaintiffs have not met their burden to identify information officially acknowledged and publicly disclosed that is as specific as, and matches, the information that Defendants withheld from the Challenged Records pursuant to Exemption 1. *See ACLU v. CIA*, 710 F.3d 422, 427 (D.C. Cir. 2013) ("A plaintiff mounting an official acknowledgment argument must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld') (citations and quotation marks omitted). With respect to the majority of the Challenged Records, Plaintiffs simply speculate that they might contain information that has been officially acknowledged in some document, and state that to the extent that is true, that information should be disclosed. *See, e.g.*, Pls. Br. at 21 (with respect to the DOS email set forth

6

at C06432239, C06432636, and C06432854, asserting that "[*i*]*f* this email contains any officially acknowledged information . . . the government may not withhold it on the basis of Exemption 1") (emphasis added); *see also* Pls. Br. at 23, 27, 29, 30, 31 (setting forth similarly speculative "official acknowledgment" assertions in response to Defendants' withholding of information pursuant to Exemption 1). These assertions do not satisfy Plaintiffs' obligation to "point[] to specific information in the public domain that appears to duplicate that being withheld." *ACLU v. CIA*, 710 F.3d at 427. Moreover, Defendants' declarants confirm that they have reviewed the Challenged Records and the publicly released documents provided by Plaintiffs, and that "the information previously officially acknowledged and made public in the documents proffered by Plaintiffs is neither as specific as, nor matched by, the information withheld in the Challenged Records." Supp. DOD Dec. ¶ 4; *see also id.* ¶¶ 5-11; Supp. DOS Dec. ¶¶ 4, 5.

In some instances, Plaintiffs make slightly more specific official acknowledgment arguments, but those, too, fail the *Wilson* test.

*DOD Emails Discussing Later Military Activities*. JS/188-191 and CENTCOM/020-026 are email chains among DOD personnel discussing military activities following the al Ghayil Raid. *See* First DOD Dec. ¶ 42. Plaintiffs argue that "the government has disclosed significant information about the types of action the President authorized to support the Shabwah Offensive," and that "[i]f any of this information appears in" these documents, "it cannot be withheld." Pls. Br. at 25-26. Most of the information to which Plaintiffs point in their Statement of Facts, however, does not appear to be drawn from any official governmental disclosure, and much of it relates to other military operations post-dating these email chains. *See* Pls. Br. at 4-5 $ nn. 23, 24, 26 (with regard to military activities purportedly following the Raid, citing, among other things, an article on a non-government website called "The Drive" supposedly quoting an

7

anonymous CENTCOM public affairs official, and other articles discussing a military action that took place in August 2017); references to statements purportedly made by anonymous or unnamed government officials do not constitute official acknowledgments.  *See, e.g.*, *Klayman v. CIA*, 170 F. Supp. 3d 114, 124 (D.D.C. 2016); *Edmonds v. FBI*, 272 F. Supp. 2d 35, 49 (D.D.C. 2003).  One document that Plaintiffs cite, an August 2017 article on a DOD website, does contain official statements by a DOD representative regarding United States military activity in Yemen.  *See* Dkt. No. 119 ("Diakun Dec."), Ex. 14.  However, the potentially relevant statements in that article are very general (*e.g.*, they refer collectively to DOD's strikes against al-Qaida in the Arabian Peninsula, or "AQAP," over a period of several months).  DOD's declarants in this case confirm that the information withheld from JS/188-191 and CENTCOM/020-026, including "details regarding the execution and scope of the operations," discussed in the emails, "as well as tactics and strategy for these later operations," is more specific than (and is not matched by) the information previously officially acknowledged and made public in the documents proffered by Plaintiffs.  Supp. DOD Dec. ¶ 5; First DOD Dec. ¶ 42.

Plaintiffs note that DOD withheld a paragraph from these email chains that "set[s] forth legal analysis regarding an aspect of planned military operations after the al Ghayil Raid."  Pls. Br. at 25; First DOD Dec. ¶ 42.  DOD has affirmed that "[t]his legal analysis is not reasonably segregable from information that has been withheld pursuant to Exemption 1."  Supp. DOD Dec. ¶ 5.  As discussed above, agencies may withhold legal analysis where, as here, its disclosure would tend to reveal the underlying classified information.  *See N.Y. Times Co.*, 806 F.3d at 687; *ACLU v. NSA*, 925 F.3d at 601.

_DOD Orders to Conduct Military Operations_.  DOD withheld currently and properly classified information from CENTCOM/027-030 and JS/057-58, including details regarding the parameters of the authorized military operations (military activities in support of the Shabwah offensive), the time span of the approval, and other operational information.  First DOD Dec. ¶ 36.  In response, Plaintiffs assert that "to the extent the government is redacting legal or policy standards that apply to 'areas of active hostilities . . . this is inappropriate because the government has asserted publicly that it adhered to the law of armed conflict in this instance and has elsewhere publicly explained what it deems those legal obligations to be."  Pls. Br. at 26.  But DOD has already re-reviewed and re-processed these documents, and released additional, previously officially acknowledged information pertaining to (among other things) the designation of an area of active hostilities and rules of engagement applicable to the authorized military operations.  First DOD Dec. ¶ 36; _see also_ Diakun Dec., Exs. 34, 42 (the reprocessed documents).  DOD has affirmed that the information still withheld from these documents is more specific than, and is not matched by, other information previously official acknowledged and made public in documents identified by Plaintiffs.  Supp. DOD Dec. ¶ 6.

Furthermore, the documents and statements that Plaintiffs cite in their Statement of Facts, which they claim elucidate the legal and policy standards applicable to the Raid, do not refer to the Raid at all, but rather set forth (at most) very generalized statements regarding the United States' military activities in Yemen.  _See_ Pls. Br. at 5-8 (citing, for example, a 2009 document that does not reference Yemen at all, and 2016 and 2018 White House reports that contain brief statements about the United States' operations in Yemen).  The potentially relevant information in these documents is not as specific as, and does not match, the information withheld from CENTCOM/027-030 and JS/057-058.  Supp. DOD Dec. ¶ 6.  As discussed above, courts

routinely uphold withholdings of information pursuant to Exemption 1 that is more detailed than a previous public disclosure, even where there is some overlap between the subject matter addressed in the previous disclosure and the withheld information. *See supra* Part I.A.

   *Defense Secretary Recommendation Memorandum Seeking Authorization of Extension of Prior Approvals of Military Action*.  STATE/034-035 is an April 2017 memorandum from the Secretary of Defense to the National Security Advisor, seeking the President's authorization to extend previous approvals of military action.  First DOD Dec. ¶ 37; Supp. DOD Dec. ¶ 7.  The memorandum includes "substantial operational detail, including intelligence assessments regarding AQAP, assessments of UAE capabilities, and assessments of the time required to complete a successful operation."  First DOD Dec. ¶ 37.  Plaintiffs identify, as a possibly relevant official acknowledgment, a DOD article dated May 23, 2017, in which a DOD spokesperson discussed a U.S. Special Operations counterterrorism raid conducted the day before against AQAP in Yemen.  *See* Pls. Br. at 27-28; Diakun Dec., Ex. 54.  In the article, the DOD spokesperson stated generally, among other things, that the May 2017 raid "was conducted under the same U.S. authorities as those granted in advance of" the al Ghayil Raid.  Diakun Dec., Ex. 54.  The DOD's declarant confirms that he has reviewed STATE/034-035 and Exhibit 54 to the Diakun Declaration, and that the information withheld from STATE/034-035 is more specific than, and is not matched by, the information officially acknowledged in the DOD article.  Supp. DOD Dec. ¶ 7.

   *Top Secret DOD Operational Proposals*.  JS/330-336 and JS/339-345 are DOD operational proposals currently and properly classified at the Top Secret level.  *See* First DOD Dec. ¶ 22 and Ex. B ("*Vaughn* Index") at 2 (reflecting classification level).  These proposals relate to the Shabwah offensive, including the al Ghayil Raid, and include detailed information

10

"indicating the geographic scope and timeframe of the operation, intelligence community assessments, and other specifics."  First DOD Dec. ¶ 22.  Plaintiffs speculate that these operational proposals are copies of a document referenced in a different DOD record, JS/324-329, and that additional information should therefore be released from these two proposal documents.  Pls. Br. at 33; Diakun Dec., Ex. 55.  However, the DOD's declarant confirms that JS/330-336 and JS/339-345 were not located as attachments to JS/324-329, and that the information withheld from the two DOD proposal documents is more specific than, and is not matched by, information previously official acknowledged and made public in JS/324-329 (or in any other documents proffered by Plaintiffs).  Supp. DOD Dec. ¶ 11.

        *Plaintiffs' Other Speculation Relating to "Legal Analysis"*.  Finally, Plaintiffs assert with respect to a handful of other Challenged Records that to the extent those records contain legal analysis or set forth the legal basis for the Raid, that information must be disclosed.  *See* Pls. Br. at 30 (regarding JS/022-023), 31 (regarding the DOD operational proposals located at CENTCOM/048-053, JS/048-053, JS/261-266, JS/273-278, and STATE/039-044).  The DOD's declarant confirms that these documents either do not contain any legal analysis at all (as to JS/022-023) or do not contain any reasonably segregable, non-exempt legal analysis (as to the DOD operational proposals).  *See* Supp. DOD Dec. ¶¶ 9, 10.

        In sum, Defendants' original and supplemental declarations confirm that the agencies in this case have carefully examined the withheld classified information in the Challenged Records, compared it against previously officially acknowledged information made public in the documents proffered by Plaintiffs, and found that the previous disclosures are not as specific as, and do not match, the withheld classified information.  Mere overlap in subject matter does not

satisfy the *Wilson* test, which demands consideration of "the specific nuances and contexts of the documents being compared." *Osen LLC*, 360 F. Supp. 3d at 265.

## II.     DOD and DOS Properly Withheld Privileged Information Pursuant to Exemption 5

Defendants also properly withheld information from each of the Challenged Records pursuant to Exemption 5, which "exempts records that would be privileged in litigation." *ACLU v. NSA*, 925 F.3d at 589. More particularly, Defendants' supporting declarations logically and plausibly establish that the deliberative process privilege and/or the presidential communications privilege apply to each of the Challenged Records, in part or in whole. Govt. Br. at 10-20. This is again unsurprising, given that Plaintiffs expressly seek records documenting the deliberative process of planning, proposing, and approving sensitive military operations within the Executive Branch, including an operation that was authorized by the President himself. *Id.* at 12. Plaintiffs argue, in conclusory and speculative fashion, that the "working law" and "adoption" doctrines vitiate Defendants' Exemption 5 withholdings, but Plaintiffs stretch those narrow exceptions— which have very recently been restated and reaffirmed by the Second Circuit—beyond their proper bounds.

### A.  "Effective Law and Policy" Exceptions to Exemption 5

In *ACLU v. NSA*, decided in May of this year, the Second Circuit "clarif[ied] the contours of Exemption 5 and the doctrines that define its limits." 925 F.3d at 593. The Court examined an Office of Legal Counsel ("OLC") memorandum, referred to as "OLC 10," that analyzed the legality of a classified surveillance program in order to advise "an Executive Branch client (the Attorney General, and eventually, the President)." *Id.* at 589-90. In the context of evaluating the government's assertion that OLC 10 was protected by the deliberative process privilege, the Court recognized that there is a "conceptual distinction between pre-decisional advice," on one

hand, and "post-decisional explanation" that has been "rendered as the agency's 'effective law and policy,'" on the other. *Id.* at 593. The Court drew distinctions between three narrow doctrines that may vitiate the protection of Exemption 5: "working law," which "describes a category of post-decisional material," and "express adoption" and "incorporation by reference," which are "two methods by which pre-decisional material can become post-decisional." *Id.* Once an agency has established that Exemption 5 applies to the withheld information, the FOIA requester has the burden to establish that any of these exceptions to the Exemption applies. *See, e.g.*, *Elec. Privacy Info. Ctr. v. DOJ*, 584 F. Supp. 2d 65, 78 (D.D.C. 2008); *Trans Union LLC v. FTC*, 141 F. Supp. 2d 62, 70 (D.D.C. 2001); *ACLU v. NSA*, 925 F.3d at 598 (noting that the ACLU had failed to "identif[y] a single agency opinion that incorporates OLC 10 by reference"); *Davis v. DOJ*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) (the government is not required to "refute" an unsupported claim of adoption).

Under the working law doctrine, an agency must disclose an otherwise privileged document only if it has become an agency's "effective law and policy"—that is, a record that has "the force and effect of law." *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. DOJ*, 697 F.3d 184, 196 (2d Cir. 2012). The document must "bind[] agency officials or members of the public." *ACLU v. NSA*, 925 F.3d at 594; *see also Afshar v. Dep't of State*, 702 F.2d 1125, 1141 (D.C. Cir. 1983). Because "working law announces what an agency's law *is*, not what the law *might be*," a document covered by that doctrine "is inherently post-decisional." *ACLU v. NSA*, 925 F.3d at 594. For example, when an agency's legal department issued memoranda to the agency's regional offices that "were routinely used by agency staff as guidance in conducting their audits, and were retained and referred to as precedent," the memoranda constituted the agency's working law. *Brennan Ctr.*, 697 F.3d at 200 (citation and quotation marks omitted);

*ACLU v. NSA*, 925 F.3d at 594. Mere "suggestions or recommendations as to what agency policy should be," "advice to a superior," or "suggested dispositions of a case" are not working law. *Brennan Ctr.*, 697 F.3d at 200. In *ACLU v. NSA*, OLC 10 was not "working law" because it was drafted and created "as legal advice rather than binding authority." *ACLU v. NSA*, 925 F.3d at 598. In *Brennan Center*, an OLC memorandum "that served an advisory function" was not "effectively binding on the agency," at least in part because OLC "lack[ed] authority[] to make policy decisions." *Brennan Ctr.*, 697 F.3d at 202; *see also N.Y. Times Co.*, 806 F.3d at 687 (noting that OLC does "not have the authority to establish the working law of the agency").

"Occasionally, documents drafted as pre-decisional material will ultimately be recycled and reissued as an agency's 'working law,'" but only pursuant to the "express adoption" or "incorporation by reference" doctrines. *ACLU v. NSA*, 925 F.3d at 595. The express adoption exception to Exemption 5 is narrow, and applies only "if an agency chooses *expressly* to adopt or incorporate by reference" an otherwise exempt document. *NLRB v. Sears, Roebuck, & Co.*, 421 U.S. 132, 161 (1975) (emphasis in the original). The agency must expressly adopt *both* the conclusion and the reasoning of a document. *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184-86 (1975); *Nat'l Council of La Raza v. DOJ*, 411 F.3d 350, 358-59 (2d Cir. 2005); *Wood v. FBI*, 432 F.3d 78, 84 (2d Cir. 2005). Thus, where an agency "simply adopt[s] only the conclusions" of an advisory document, the analysis in the memorandum has not been adopted because "[m]ere reliance on a document's conclusions does not necessarily involve reliance on a document's analysis; both will ordinarily be needed before a court may properly find adoption or incorporation by reference. *La Raza*, 411 F.3d at 358.

Moreover, there is no adoption "where an agency has only casually referred to a document, because casual reference to a privileged document does not necessarily imply that an

agency agrees with the reasoning contained in those documents." *Id.* "Rather, there must be evidence that an agency has *actually* adopted or incorporated by reference the document at issue," and "mere speculation will not suffice." *Id.*; *see also, e.g.*, *ACLU v. NSA*, (noting that courts generally look for "external evidence that such adoption has occurred," and citing cases in which "official statements" indicated that certain records had been adopted as binding agency law); *Common Cause v. IRS*, 646 F.2d 656, 660 (D.C. Cir. 1981) (allusion in post-decisional document to subject matter discussed in predecisional, intra-agency memoranda is not express adoption or incorporation that would override Exemption 5 protection); *Brennan Ctr.*, 697 F.3d at 206 (finding no adoption where there had been no "specific reference to" two advisory memoranda or their reasoning by the relevant agencies, and the mere fact that those agencies acted in keeping with the memoranda's recommendations did not "establish that the agencies adopted their reasoning"); *Judicial Watch, Inc. v. DOD*, 847 F.3d 735, 738-89 (D.C. Cir. 2017) (when agency official wrote "cover memo" to Secretary of Defense setting forth his "recommendation," and even drafted letters to members of Congress for the Secretary's signature to notify them of the determination, the Secretary did not expressly adopt the "cover memo" simply because he signed the letters to Congress).

"Incorporation by reference" is "[a] close cousin" to "express adoption." *ACLU v. NSA*, 925 F.3d at 597. "But whereas in 'express adoption' cases we look for *indications* that an agency relates to the document as binding, in cases of 'incorporation by reference,' we identify the agency's *enactment* of that document as its law or policy through explicit textual reference in a final decision." *Id.* (emphases in the original). "[I]ncorporation only occurs when the incorporating 'opinion' is itself a document with functionally binding effect." *Id.* at 598. Thus, "a decisionmaker's mere statements expressing his or her reliance on the reasoning of a separate

15

memorandum do not amount to 'incorporation' of that memorandum." *Id.* "In sum, a previously privileged document is subject to disclosure under the doctrine of 'incorporation by reference' only when an agency's *formal opinion or determination of law or policy* expressly references and relies on that document and its reasoning as the basis for a decision." *Id.* (emphasis added).

Plaintiffs suggest briefly that "[j]ust as official acknowledgment defeats Exemption 1," "when the government . . . has revealed confidential information," it may no longer invoke Exemption 5 to withhold that information. Pls. Br. at 19-20. As the Second Circuit explained in *ACLU v. NSA*, however, "disclosure of similar *information* to that contained in documents protected by" certain privileges does not constitute a waiver where the "privileges protect a communication, not information." *ACLU v. NSA*, 925 F.3d at 599 (emphasis in the original). The ACLU's invocation of an "official acknowledgment"-type doctrine in the privilege (rather than the classification) context is therefore misplaced. A privilege is not "lost by the mere fact that the information communicated is otherwise available to the public," and "[t]he concept of 'official acknowledgment' is thus irrelevant to the Exemption 5 inquiry and cannot provide an independent basis for overcoming" that exemption. *Id.* at 590-91.

### B.  Defendants Properly Withheld Information Protected by the Deliberative Process Privilege

DOD and DOS properly withheld information in eighteen of the Challenged Records pursuant to the deliberative process privilege. *See* Govt. Br. at 11-15; First DOD Dec. ¶¶ 20, 23, 27, 33, 37; First DOS Dec. ¶¶ 24, 33, 40. The deliberative process privilege "promotes reasoned policy-making" by protecting the "frank discussion of legal or policy matters in writing," which "might be inhibited if the discussion were made public." *ACLU v. NSA*, 925 F.3d at 592. Because the FOIA request in this case expressly seeks deliberative records, Plaintiffs cannot contest that many of the Challenged Records were drafted or created as predecisional, advisory

documents.  *E.g.*, Pls. Br. at 28 (with respect to advisory memoranda drafted by the Secretary of

Defense for consideration by the President, conceding that the documents "were initially

deliberative and predecisional").  Plaintiffs' cursory, speculative attempts to demonstrate that

these deliberative records were actually created as agency working law, or became agency

working law through express adoption or incorporation by reference, fail.

        *DOS Readouts of Deputies Committee Deliberations*.  With respect to all of the

challenged DOS documents, DOS's first declaration logically and plausibly established that their

contents are largely exempt from disclosure under Exemption 5 because they set forth

deliberative, predecisional discussions among members of the Deputies Committee regarding the

proposed and upcoming al Ghayil Raid.  *See* First DOS Dec. ¶¶ 30, 33, 37, 40.  With respect to

the three copies of an email providing a readout of the January 6, 2017 Deputies Committee

("DC") Meeting discussing the proposed Raid—weeks before the Secretary of Defense even

submitted his recommendation memorandum regarding the Raid to the President for

consideration and approval—Plaintiffs make two claims based solely on remarks made by then-

Press Secretary Sean Spicer at a press conference.  Pls. Br. at 21.  First, Plaintiffs speculate that

the email must reflect decisions made by the Deputies Committee, and the email is therefore

post-decisional, and second, they contend that Mr. Spicer "publicly relied on those decisions"

during the conference, suggesting without actually stating that this internal DOS email therefore

became the "working law" of some agency.  Pls. Br. at 21.  Both of these claims fall well short of

vitiating the privileged status of the withheld information in this email.  Mr. Spicer did not refer

to this email in the remarks that Plaintiffs cite, *id.*, and any statements he made about the January

6 Deputies Committee meeting do not disclose what is actually contained in this particular

document.  To the contrary, the First DOS Declaration represents that the information withheld

from this email consists of "predecisional deliberations about a wide range of issues concerning the operation, including contingencies that could occur before or in the course of the operation, and potential ways to address such contingencies.  These discussions were predecisional because they predated both the President's decision whether to approve the operation . . . and the Deputies Committee's recommendation to the President, and they constituted part of the Deputies Committee's deliberative process of formulating a recommendation to the President." First DOS Dec. ¶ 40.

Plaintiffs' vague "public reliance" argument amounts to an assertion that Mr. Spicer "relied" not on this or any other specific document, but on his own statements about the January 6, 2017 DC Meeting.  Pls. Br. at 21.  That falls well short of establishing that this particular document was drafted or created as agency "working law," or that any part of it was expressly adopted or incorporated by reference by any agency or official, much less one with the authority to do so.  There is no legal basis to require disclosure of the details of a deliberative discussion among presidential advisors about a proposed military operation, simply because the former Press Secretary disclosed that the discussion took place, or even because he disclosed the Deputies Committee's ultimate decision to make a particular recommendation to the President. The email would reveal the predecisional deliberations of the Deputies Committee that led to their recommendation—which is exactly what the privilege is intended to protect.  Compelled disclosure of such deliberations would chill not only the frankness of similar discussions, at the highest levels of government, but also the government's transparency in disclosing steps of the approval process relating to military actions.

As to C06432231, the email discussing the deliberations that took place during the January 26, 2017 DC Meeting, Plaintiffs again rely solely on Mr. Spicer's remarks (which they

characterize as an "official narrative") to speculate that "much of this email should reflect post-decisional deliberations." Pls. Br. at 24. But the First DOS Declaration establishes that this email "summarizes interagency deliberations" relating not simply to the President's prior approval of the al Ghayil Raid, but "about contingencies that could occur before or in the course of the operation, and potential ways to address such contingencies." First DOS Dec. ¶ 33. These discussions were, therefore, predecisional. *Id.* Plaintiffs cannot, and do not attempt to, rebut this sworn statement about the information withheld from this document.

*Secretary of Defense Recommendation Memoranda and DOD Operational Proposals.*

Plaintiffs also speculate that the Defense Secretary's January 2017 recommendation memorandum relating to the al Ghayil Raid, the detailed DOD operational proposal attached to the memorandum, and the Defense Secretary's April 2017 memorandum seeking authorization of an extension of prior approvals all lost their concededly "deliberative and predecisional" character at some point. *See* Pls. Br. at 27-29, 30-31. Plaintiffs contend that these documents became "the final plan adopted by the government." *E.g.*, *id.* at 31. No evidence supports these speculative claims. Indeed, DOD processed the two relevant decisional documents: the presidential memoranda approving the Raid (JS/022-023) and the later extension of prior approvals (STATE/031-032). *See* Supp. DOD Dec. ¶¶ 7, 9, 10. These presidential authorization memoranda did not cite or reference any of the predecisional recommendation memoranda or operational proposals. *Id.* ¶¶ 9, 10. Therefore, although in both instances the President indicated his approval of military action, there is no evidence that he (or anyone else with authority to do so) "adopted" any of these recommendation memoranda or operational proposals in whole or in part. *See, e.g.*, *Wood*, 432 F.3d at 84 (decisionmaker's mere endorsement of a memo's conclusion did not indicate that the agency adopted the memo's reasoning, and therefore the

doctrines of adoption and incorporation by reference did not apply); *ACLU v. NSA*, 925 F.3d at

598 (rejecting the ACLU's adoption argument because "there is no evidence that the

Government ever 'adopted' OLC 10 as binding").

In contrast to Plaintiffs' contentions, DOD's declarations logically and plausibly show

that Exemption 5 applies to the information withheld from these documents, and provide ample

"information about who received the memoranda [and attached operational proposals], for what

purpose, and when."  Pls. Br. at 28; *see* First DOD Dec. ¶¶ 22, 31, 37; Supp. DOD Dec. ¶¶ 7, 10.

The fact that some copies of these documents were circulated to limited groups of DOD

personnel or high-level government officials after the President approved the Raid, for

discussion purposes or to provide background information, does not transform them into "final

plans" adopted by the government.  *See* Pls. Br. at 28, 31; First DOD Dec. ¶ 22 and Supp. DOD

Dec. ¶¶ 7, 10 (discussing the circulation of JS/009-011, JS/048-053, and STATE/039-044, to

limited groups to provide background information).  Nor is there any evidence that, as Plaintiffs

speculate, the DOD operational proposal constituted agency "working law."  Pls. Br. at 31.  The

document is not "law" at all, but rather a proposal attached to the Defense Secretary's

recommendation memorandum in order "to provide complete *operational* detail for the

President's consideration."  First DOD Dec. ¶ 24 (emphasis added).  DOD's declarant affirms

that the document "does not contain any reasonably segregable, non-exempt legal analysis."

Supp. DOD Dec. ¶ 10.

*DOD Briefing Slides*.  Plaintiffs argue that these briefing slides, which were created

before the al Ghayil Raid and reflect detailed operational information about the planning of the

Raid, *see* Supp. DOD Dec. ¶ 8, may no longer be deliberative process privileged if the "agency

circulated and treated them as final."  Pls. Br. at 29.  Plaintiffs contend that because the slides

were attached to a post-Raid email within DOD, "as a point of factual reference to be used in the planning of future operations," "it seems likely" that the slides reflect an agency decision or an "adopted" agency policy. *Id.* at 29-30. Again, Plaintiffs' view of express adoption bears no resemblance to the actual doctrine, as defined by the Second Circuit. First, there is no evidence or reason to suspect that these operational briefing slides, which are "generally logistical in nature," Supp. DOD Dec. ¶ 8, set forth any law or policy of any kind, much less "working law" or an expressly "adopted" agency policy. Rather, they contain a bevy of planning-stage information relating to the anticipated Raid, including photographs, maps, diagrams, weapons and systems information, foreign government information, intelligence assessments, recommendations, proposals for DOD military support to coalition partner operations, discussion of detainee issues, and other operational specifics. *Id.* It is difficult to square the agency's sworn description of these briefing slides, which is entitled to a presumption of good faith, *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994), with Plaintiffs' speculation that they constitute some type of "final, post-decisional" agency position document. Pls. Br. at 29-30. The mere fact that DOD personnel and officials may have consulted these slides in the course of planning future military operations does not mean that the slides were "expressly adopted" and converted into agency "working law." There is no indication that these slides ever assumed the status of "binding" agency law (nor that they constitute law at all), *see ACLU v. NSA*, 925 F.3d at 594, nor that they were ever expressly adopted as a whole (or even in part) by any agency, *see, e.g.*, *La Raza*, 411 F.3d at 358-59. To the contrary, the law states that a mere "casual reference to a privileged document" does not suffice to waive the deliberative process privilege. *Id.* at 358.

*Top Secret DOD Operational Proposals.* Finally, as to JS/330-336, JS/339-345, the two DOD operational proposal documents relating to the anticipated al Ghayil Raid that are currently

and properly classified at the Top Secret level, Plaintiffs contend only that "[t]o the extent that the government has officially acknowledged information specific to these documents, such as the title, that disclosure overcomes the deliberative process privilege." Pls. Br. at 33. As discussed above, the information withheld from these documents is more specific than, and is not matched by, information previously officially acknowledged and made public in any documents identified by Plaintiffs. *See supra* Part I.B; Supp. DOD Dec. ¶ 11. More generally, however, even if DOD had disclosed similar information to that withheld in these documents pursuant to the deliberative process privilege, that would not waive the privilege, as it protects a communication, not particular information contained therein. *ACLU v. NSA*, 925 F.3d at 599.

### C. Defendants Properly Withheld Information Protected by the Presidential Communications Privilege

Defendants also properly withheld information from fifteen of the Challenged Records pursuant to the presidential communications privilege. *See* Govt. Br. at 15-20; First DOD Dec. ¶¶ 21, 24, 33, 37; First DOS Dec. ¶¶ 25, 34, 41. The only Challenged Records still at issue to which this privilege applies are the four DOS records (C06432231, C06432239, C06432636, and C06432854); the January 2017 and April 2017 Defense Secretary recommendation memoranda (CENTCOM/045-047, JS/009-011, JS/054-056, JS/280-282, STATE/034-035, and STATE/036-038); and the DOD operational proposal that was attached to the January 2017 Defense Secretary recommendation memorandum (CENTCOM/048-053, JS/048-053, JS/261-266, JS/273-278, and STATE/039-044). *See* First DOS Dec. ¶¶ 34, 41; First DOD Dec. ¶¶ 24, 33, 37; Pls. Br. at 22-25, 28-29, 31-32. The Court need not reach the issue of the presidential communications privilege as to any of these Challenged Records, as the deliberative process privilege applies to the same withheld information. *See supra* Part II.B. The information withheld from those records is also currently and properly classified, and therefore exempt from disclosure under

Exemption 1.  *See supra* Part I.B.  Neither DOD nor DOS withheld any information from the

Challenged Records solely pursuant to the presidential communications privilege.

In any event, Defendants' declarations logically and plausibly show that they properly

withheld some information from the Challenged Records pursuant to the presidential

communications privilege.  *See* First DOS Dec. ¶¶ 34, 41; First DOD Dec. ¶¶ 24, 33, 37; Govt.

Br. at 15-20.  Plaintiffs contest the application of the privilege primarily because of the limited

distribution of some copies of the relevant Challenged Records to some groups of individuals

within the Executive Branch.  *See* Pls. Br. at 22-25, 28-29, 31-32.  But the presidential

communications privilege is not as cramped as Plaintiffs suggest; it protects not only

communications directly with the President, but also communications involving senior

presidential advisors, including "both [] communications which these advisors solicited and

received from others as well as those they authored themselves," and communications "authored

or solicited and received by those members of an immediate White House adviser's staff who

have broad and significant responsibility for investigating and formulating the advice to be given

the President on the particular matter to which the communications relate."  *In re Sealed Case*,

121 F.3d 729, 752 (D.C. Cir. 1997); *see also CREW v. DHS*, 06-0173, 2008 WL 2872183, at *3

(D.D.C. July 22, 2008) (the privilege also reaches records reflecting or memorializing

communications that were solicited and received by the President or his advisors).  The relevant

Challenged Records reflect communications solicited or received by the President or his senior

advisors (including the Secretary of Defense, the National Security Advisor, and the Deputies

Committee), and the limited distribution of these documents to certain groups of government

officials and personnel who had a need to know the information did not disturb the privilege.

*See* First DOS Dec. ¶¶ 34, 41 (describing how the challenged DOS records were closely held

within the Executive Branch and/or sent only to a small group of DOS personnel who had a need to know the information to perform their duties); First DOD Dec. ¶¶ 24, 33, 37 (describing the distribution of the relevant DOD records only to high-level presidential advisors or government officials, including Cabinet members and members of the Deputies Committee, and/or to a limited group of DOD personnel involved in the planning and execution of the Raid).

Plaintiffs' other objections to the assertion of the presidential communications privilege in the relevant Challenged Records are also without merit. As to the DOS email providing a readout of the January 6, 2017 DC Meeting, Plaintiffs again invoke former Press Secretary Sean Spicer's supposed "official disclosures" about that meeting to claim that Exemption 5 privileges over that email have been waived—to the extent Mr. Spicer's "disclosures" are memorialized within the email. Pls. Br. at 23. But as discussed above, this type of "official acknowledgment" argument does not apply in the Exemption 5 context, and certainly not where Plaintiffs are simply speculating about the contents of the withheld DC deliberations. With respect to the DOD operational proposals that were attached to the Defense Secretary's January 2017 recommendation memorandum, Plaintiffs argue again that the proposal was implicitly transformed into an "authorization" document, because one copy of the proposal was attached to the May 2017 presidential memo authorizing the extension of prior approvals of military action. Pls. Br. at 32. As discussed above, however, there is no evidence that this proposal document was ever "adopted" or otherwise treated as binding "working law" (or any law) by any agency or official. *See supra* Part II.B. Moreover, even if the proposal document did constitute a final or post-decisional document (which it does not), that would not waive the presidential communications privilege, which "covers final and post-decisional materials as well as pre-deliberative ones." *Judicial Watch, Inc. v. DOJ*, 365 F.3d 1108, 1114 (D.C. Cir. 2004).

### III.    Defendants Re-Reviewed the Challenged Records in Good Faith and Produced All Reasonably Segregable Portions Thereof

Finally, Defendants' declarations establish their compliance with FOIA's requirement that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  *See* First DOD Dec. ¶ 49; First DOS Dec. ¶ 43.  Indeed, as discussed in their declarations, Defendants undertook to re-review and re-process all of the Challenged Records, resulting in the release of additional information to Plaintiffs.  *See, e.g.*, Govt. Br. at 32 n.19. Courts have routinely found that an agency's additional releases of information, accomplished as a result of working with the FOIA requester, demonstrate good faith by the agency, rather than the opposite.  *See, e.g.*, *Conti v. DHS*, No. 12 Civ. 5827 (AT), 2014 WL 1274517, at *15 (S.D.N.Y. Mar. 24, 2014) (citing cases).  While Plaintiffs attempt to minimize and mischaracterize Defendants' efforts in this regard, s*ee, e.g.*, Pls. Br. at 9 n.40, 15 n.43, 33-34, Defendants have amply established that they met their obligations under FOIA with respect to the Challenged Records.

## CONCLUSION

For these reasons, the Court should grant summary judgment to DOD and DOS and deny Plaintiffs' cross-motion.

Dated: New York, New York                   Respectfully submitted,
      June 28, 2019

                                        GEOFFREY S. BERMAN
                                        United States Attorney for the
                                        Southern District of New York
                                        Attorney for Defendants the Department of
                                        Defense and Department of State

By:    /s/ *Rebecca S. Tinio*
            REBECCA S. TINIO
            Assistant United States Attorney
            86 Chambers Street, 3rd Floor
            New York, New York 10007
            Telephone:  (212) 637-2774
            Facsimile:  (212) 637-2702