036IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, *et al.*, ) | |
| ) | Civil Action No. |
| Plaintiffs, ) | 17-cv-3391 (PAE) |
| ) | |
| v. ) | |
| ) | |
| DEPARTMENT OF DEFENSE, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF MARK H. HERRINGTON

Pursuant to 28 U.S.C. § 1746, I, Mark H. Herrington, hereby declare under penalty of perjury that the following is true and correct:

1. I am an Associate Deputy General Counsel in the Office of General Counsel ("OGC") (Office of Litigation Counsel) of the United States Department of Defense ("DOD"). OGC provides legal advice to the Secretary of Defense ("OSD") and other leaders within the DOD. I am responsible for, among other things, overseeing Freedom of Information Act ("FOIA") litigation involving DOD. I have held my current position since March 2007. My duties include coordinating searches across DOD to ensure thoroughness, reasonableness, and consistency.

2. The statements in this declaration are based upon my personal knowledge and upon my review of information available to me in my official capacity. Specifically, I am the OGC counsel assigned to this case.

3. I am familiar with the assertions set forth in Plaintiffs' memorandum of law ("Plaintiffs' Memorandum") and accompanying Declaration of Anna Diakun filed on May 10, 2019, regarding the records processed and released by DOD in this matter that contain withholdings challenged by plaintiffs (the "Challenged Records"). *See* Dkt. Nos. 118-19. I am also familiar with the Declaration of Major General Jim Hecker, dated April 5, 2019, submitted in support of

DOD's motion for summary judgment. *See* Dkt. No. 113 ("April 2019 Declaration"). This supplemental declaration provides additional facts supporting DOD's withholdings, pursuant to FOIA Exemptions 1 and 5, in the Challenged Records.

4. I understand that in Plaintiffs' Memorandum, Plaintiffs identify certain publicly available documents and statements that they suggest may constitute official acknowledgments of information withheld from the Challenged Records pursuant to Exemption 1. I have reviewed the Challenged Records and the documents provided by Plaintiffs in support of this argument, including Exhibits 15 (the "2018 White House Report"), 16 (the "2016 White House Report"), and 19 ("No-Strike and the Collateral Damage Estimation Methodology," dated February 3, 2009) to the Diakun Declaration. As discussed further below, the information previously officially acknowledged and made public in the documents proffered by Plaintiffs is neither as specific as, nor matched by, the information withheld in the Challenged Records.

5. With respect to JS/188-191 and CENTCOM/020-026, the information withheld from these two email chains relates to military activities following the al Ghayil Raid, and is more specific than (and not matched by) information previously officially acknowledged and made public in the documents identified by Plaintiffs. Plaintiffs point particularly to a paragraph that appears on CENTCOM/023 and JS/189, which the April 2019 Declaration describes as "setting forth legal analysis regarding an aspect of planned military operations after the al Ghayil Raid." This legal analysis is not reasonably segregable from information that has been withheld pursuant to Exemption 1.

6. I further understand that Plaintiffs continue to challenge the withholding of some information from CENTCOM/027-030 and JS/057-058, which are military orders to conduct operations supporting the Shabwah offensive. The information that continues to be withheld

2

from these records, after DOD's voluntary re-processing of (and release of additional detail from) the records in late 2018, is more specific than (and not matched by) information previously officially acknowledged and made public in the documents identified by Plaintiffs.

7. CENTCOM/045-047, JS/009-011, JS/054-056, JS/279-282, STATE/036-038, and STATE/034-035 are memoranda from the Secretary of Defense to the National Security Advisor seeking the President's approval of military action. CENTCOM/045, JS/009-011, JS/054-056, JS/279-282, and STATE/036-038 pertain to the proposed al Ghayil Raid; STATE/034-035 is a later-dated memorandum asking for authorization for an extension of a prior approval of military operations (which authorization was granted by the President in May 2017). The information withheld from these memoranda is more specific than (and not matched by) information previously officially acknowledged and made public in the documents identified by Plaintiffs including in the May 23, 2017 article attached as Exhibit 54 to the Diakun Declaration. In addition, as discussed in the April 2019 Declaration, although some versions of these memoranda were circulated to limited groups of DOD personnel or high-level government officials, there is no indication in the documents processed by DOD that these memoranda were ever, as Plaintiffs suggest, "relied upon as final," which I understand to mean "relied upon" as agency policy or as a decisional document (which, in this context, would be the Presidential authorization memoranda released at JS/022-023 (for the al Ghayil Raid) and STATE/031-032 (for the May 2017 extension of a prior approval of military operations)). Plaintiffs point particularly to the draft, unsigned version of the memorandum relating to the proposed al Ghayil Raid (JS/009-011), which was located as an attachment to an email sent to three limited internal distribution lists consisting of DOD attorneys (the email appears at JS/400-404 and is not a Challenged Record). The email set forth at JS/400-404 provides a "post-op review" of the al

3

Ghayil Raid and discusses possible future steps and actions; it does not cite or reference JS/009-011, but appears only to attach it to provide background context.

8. With respect to CENTCOM/246-268, which consists of briefing slides that were created before the al Ghayil Raid (and were attached to a later email within DOD discussing proposals for subsequent military action), the detailed operational information in these slides is more specific than (and not matched by) information previously officially acknowledged and made public in the documents identified by Plaintiffs. Furthermore, as explained in the April 2019 Declaration, the information reflected in these slides relates to the planning of proposed military operations; is generally logistical in nature, and includes photographs, maps, diagrams, weapons and systems information, foreign government information, intelligence assessments, recommendations, proposals for DOD military support to coalition partner operations, discussion of detainee issues, and other operational specifics.

9. JS/022-023 is, as explained in the April 2019 Declaration, the document reflecting the President's approval of the al Ghayil Raid. The information still withheld from this document, after DOD voluntarily re-processed it to release additional detail, is more specific than (and not matched by) information previously officially acknowledged and made public in the documents identified by Plaintiffs. This document does not contain any legal analysis. Furthermore, this document does not cite, reference or attach any other documents, including the documents discussed in paragraphs 7, 10, and 11 of this declaration.

10. CENTCOM/048-053, JS/048-053, JS/261-266, JS/273-278, and STATE/039-044 are, as discussed in the April 2019 Declaration, identical copies of a detailed DOD operational proposal document regarding support to the Shabwah offensive, including the anticipated al Ghayil Raid. The information withheld from the proposal document is more specific than (and not matched

4

by) information previously officially acknowledged and made public in the documents identified by Plaintiffs. The proposal document does not contain any reasonably segregable, non-exempt legal analysis. The proposal document did not become an authorization for action by virtue of the fact that one version of it (STATE/039-044) was located as an attachment to the memorandum from the National Security Advisor conveying the President's May 2017 authorization of an extension of prior approval for military operations. That Presidential authorization memorandum was processed and released at STATE/031-032, and is not a Challenged Record. Furthermore, that Presidential authorization memorandum does not cite or reference STATE/039-044 (or STATE 036-038, discussed above), but appears only to attach it (and STATE/036-038) to provide background context.

11. JS/330-336 and JS/339-345 are detailed operational proposals, pre-dating the al Ghayil Raid, regarding proposed support to the Shabwah offensive. In Plaintiffs' Memorandum, Plaintiffs suggest that these proposals may be copies of a document referenced in another record, JS/324-329 (not a Challenged Record), and that additional information should therefore be released from JS/330-336 and JS/339-345. However, JS/330-336 and JS/339-345 were not located as attachments to JS/324-329, and the information withheld from JS/330-336 and JS/339-345 is more specific than, and is not matched by, information previously officially acknowledged and made public in JS/324-329, or in the other documents identified by Plaintiffs in their Memorandum.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of June, 2019, in Arlington, VA.

Mark H. Herrington, Esq.
Associate Deputy General Counsel

5